Edwin COLÓN–DÍAZ, Petitioner

v.

U.S.A., Respondent.

Civil No. 09–1472 (DRD).
Criminal No. 05–0194 (DRD).

United States District Court,
D. Puerto Rico.

Sept. 20, 2012.

Alexander Zeno, Washington, DC, for Petitioner.

Nelson J. Perez–Sosa, U.S. Attorney's Office, San Juan, PR, for Respondent.

### OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before this Court is a motion filed by petitioner Edwin Colón–Díaz ("Pe-titioner") to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion") (Docket No. 1.), which was referred to Magistrate Judge Justo Arenas for a Report and Recommen-dation (Docket No. 29).

Upon review of Magistrate Judge's Re-port and Recommendation (Docket No: 32) and Plaintiff's opposition thereto (Docket No. 35), the Court hereby **ACCEPTS, ADOPTS** and **INCORPORATES** the Re-port and Recommendation as outlined be-low and **DENIES** Petitioner's motion filed under 28 U.S.C. § 2255.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was found guilty by a jury trial on June 30, 2006 after rejecting to enter into a plea agreement on numerous occasions. His conviction was the result of an indictment in all counts of a five-count superseding indictment in Criminal No. 05–194. Petitioner was sentenced to 240 months imprisonment in each of the five counts to be served concurrently with each other. Petitioner appealed; however, the First Circuit affirmed the conviction. During his trial, Petitioner was represent-ed by Attorney Antonio Bauzá, while his counsel at the appeal was Attorney Rafael Castro Lang, both which were retained by the District Court and the Appellate Court (Docket No. 1).

In the instant Section 2255 Motion, Peti-tioner alleges violation of his right to effec-tive assistance of competent counsel at the trial as well as the appellate level.[1] Specif-

---

**1.** Petitioner also seeks retroactive application of the Sentencing Guidelines as to crack co-caine offenses, which is not within the scope of a motion filed under 28 U.S.C. § 2255. As Magistrate Judge Arenas correctly stated in his Report and Recommendation (Docket No. 32, note 6), Petitioner must file a separate motion requesting such relief pursuant to the Administrative Directive filed in this Court under 11–437(ADC) *In re: Petitions for Sen-*

ically, Petitioner claims that his trial counsel failed to: (1) file motions to suppress evidence as to the searches and seizures held at various locations; (2) object to certain jury instructions; (3) object to the government's failure to produce the rough notes of an enforcement agent that were allegedly adopted by a witness during her testimony; and (4) request a jury instruction as to whether or not the jury should consider a witness' testimony in connection with a particular evidentiary matter. Also, Petitioner contends that his appellate counsel failed to allege that: (1) the testimony of two witnesses should not have been allowed as expert testimony during the trial; and (2) the testimony of a confidential informant should have been considered as testimony of a cooperator (Docket No. 1). Lastly, Petitioner alleges violations to his due process rights when the trial court failed to instruct the jury about the possibility of returning a non-unanimous verdict. Petitioner subsequently withdrew such contention (Docket No. 13, page 1).

The Court referred Petitioner's Section 2255 Motion to Magistrate Judge Justo Arenas (Docket No. 29) for a Report and Recommendation ("R & R"). In his R & R (Docket No. 32), Magistrate Judge Arenas fully examined the record of Petitioner's Criminal Case and the lengthy opinion issued by the First Circuit in Petitioner's appeal. After extensively reviewing the record and the pertinent law, Magistrate Judge Arenas found that although the performance of Petitioner's trial counsel fell below an objectively reasonable standard that would be tantamount to a violation of Petitioner's Sixth Amendment rights, Petitioner failed to show that such performance prejudiced him in the crimi-

nal proceeding. Magistrate Judge Arenas, applying *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), stated that to prove that Petitioner was prejudiced as a result of his counsel's deficient performance, Petitioner had to show that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, Magistrate Judge Arenas found that because Petitioner failed to prove that the trial counsel's errors affected Petitioner's final verdict, Petitioner's claim of ineffective assistance of counsel against his trial counsel falls short of the required threshold pursuant to the R & R entered by Magistrate Judge Arenas.

Magistrate Judge Arenas further found that Petitioner failed in his challenge to his appellate counsel's performance because Petitioner failed to meet the burden of proof for both elements of the two-part test: that counsel's representation fell below an objective standard of reasonableness; and that the deficient performance prejudiced his defense. Further, after examining the First Circuit opinion on Petitioner's appeal, the arguments posed by the appellate counsel, and the manner in which the appellate counsel directed the Court of Appeals, Magistrate Judge Arenas found that Petitioner's appellate counsel was ingenious and that he chose what counsel considered were the best possibilities on appeal. Thus, Magistrate Judge Arenas found that Petitioner's claim of ineffective assistance of counsel against his appellate counsel to be ultimately meritless.

Petitioner opposed the R & R alleging, that the conclusions reached as to the trial counsel are ambiguous and incompatible.

*tencing Reduction Base on the Amendments to the Guidelines for Cocaine Base Offenses Made Retroactive by the United States Sentencing*

*Commission to Take Effect on November 1, 2011.*

Also, as to the conclusions reached regarding the appellate counsel, Petitioner contends that Magistrate Judge Arenas did not understand his concerns that the appellate counsel should have used better or stronger issues on appeal, instead of arguing "a bad issue." (Docket No. 35).

## II. MAGISTRATE'S REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* Fed.R.Civ.P. 72(b); D.P.R. Civ. R. 72(a), Local Rules, District of Puerto Rico; and *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Nonetheless, an adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections to the recommendations made. Fed.R.Civ.P. 72(b). In such respect, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> [w]ithin fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

(Emphasis added).

█ "Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992). *See also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"); *United States v. Valencia,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980).

█ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir.1996) (*en banc*) (extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir.1982) (*en banc*) (appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R.2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Ad-

visory Committee note regarding FED. R.CIV. P. 72(b)); *Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

An adversely affected party may "contest the [m]agistrate [j]udge's report and recommendation by filing objections 'within ten² days of being served' with a copy of the order." *United States v. Mercado Pagan*, 286 F.Supp.2d 231, 233 (D.P.R. 2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall make a *de novo* determination of those portions of the report or specified findings or recommendation to which an objection is made. *See Bonefont–Igaravidez v. International Shipping Corp.*, 659 F.3d 120 (1st Cir.2011); and *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006). In reviewing objections, this Court need not "consider frivolous, conclusive, or general objections." *Espada–Santiago v. Hospital Episcopal San Lucas*, Civil No. 07–2221, 2009 WL 702350 at *1 (D.P.R. 2009); *see also Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir.1991) (holding that "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object").

In the instant case, Petitioner objects the conclusions reached by the Magistrate Judge Arenas with respect to his findings as to the ineffective assistance of his trial counsel and his appellate counsel. Consequently, the Court reviews *de novo* the portions of the R & R which Petitioner specifically objected.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ To establish ineffective assistance of counsel, a defendant must comply with a two-part test: (1) his attorney's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

■ In order to demonstrate deficiency, a defendant must establish that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Under *Strickland*, counsel is presumed to have acted within the range of "reasonable professional assistance," and, consequently, the defendant bears the burden of "overcoming the presumption that, under the circumstances, [the] challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. To show prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. However, this assessment "must be a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or successful defense.'" *Moreno–Espada v. United States*, 666 F.3d 60, 64 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir.1994)).

■ A claim of ineffective assistance of counsel "requires a court to first assess whether 'counsel's representation fell below an objective standard of reasonableness.'" *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). It is pellucidly clear that Petition-

---

2. Per Local Rule 72(d), parties may object a magistrate judge's report and recommenda- tion within fourteen (14) days after being served with the order.

er was obligated to show both that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted therefrom. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. *See also Lopez–Nieves v. United States*, 917 F.2d 645, 648 (1st Cir.1990). Petitioner must comply with the two-part test as to each particular instance in which he claims ineffective assistance of counsel. Counsel's performance must be examined "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir.1991). The "range of reasonable professional assistance" is wide. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Therefore the Supreme Court has stated that, "judicial scrutiny of counsel's performance must be highly deferential." *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

 Under *Strickland*, Petitioner is required to identify acts or omissions by counsel which need to be outside the wide range of professional competent assistance and the harm such actions caused. Furthermore, "a defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Moreno–Espada v. United States*, 666 F.3d at 64 (quoting *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir.2010)).

### A. Claims As To Trial Counsel

### 1. Failure to Move to Suppress

 "[F]ailure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Rather, in order to demonstrate actual prejudice when the ineffectiveness claim is based on a Fourth Amendment rights violation, the petitioner must show that both "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman*, 477 U.S. at 375, 106 S.Ct. 2574. *See also U.S. v. Rosario–Puente*, 41 Fed.Appx. 483 (1st Cir.2002) (applying *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Jiménez v. Spencer*, 2009 WL 2145803, *4 (D.Mass.2009)).

 The Fourth Amendment protects the right to be free from unreasonable searches and seizures, but it is silent about how this right is to be enforced. The Supreme Court has created the "exclusionary rule" to supplement the bare text of the Fourth Amendment "to compel respect for the constitutional guarantee." *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). However, this exclusion is "not a personal constitutional right," *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), but a way "to deter future Fourth Amendment violations." *Davis v. United States*, —— U.S. ——, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011) (citing *Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009); *United States v. Leon*, 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The exclusionary rule is a "harsh sanction" triggered only when police practices are deliberate enough to yield meaningful deterrence and culpable enough to be worth the price paid by the justice system. *Davis v. United States*, 131 S.Ct. at 2428 (quoting *Herring v. United States*, 555 U.S. at 144, 129 S.Ct. 695). "[S]uppression [of the evidence seized] is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. at 137, 129 S.Ct. 695. Instead, the courts must examine the culpability of the law enforcement conduct and perform a

balancing test of the deterrence benefits of the exclusionary rule and the substantial social costs onto the judicial system and society. *Davis v. United States,* 131 S.Ct. at 2427. Should the police acts be deliberate, reckless, or grossly negligent, disregarding Fourth Amendment rights, then the deterrent value of the exclusionary rule is strong and it outweighs the resulting social costs. But, if police acts with an objectively reasonable good-faith belief that their conduct is lawful, or when the police conduct involves simple negligence, "the deterrence rationale loses much of its force and exclusion cannot pay its way." *Id.* (Internal quotations omitted). Thus, "searches conducted in objectively reasonable reliance on binding [...] precedent are not subject to the exclusionary rule." *Davis v. United States,* 131 S.Ct. at 2423–24.

Petitioner's first claim of ineffective assistance of counsel is predicated on a Fourth Amendment right violation, alleging that his trial counsel failed to move the trial court to suppress the evidence obtained in certain warrantless searches that would have resulted in the exclusion of such evidence and in a different verdict in his criminal case (Docket 1). Pursuant to the holding in *Kimmelman,* the Court must first determine whether Petitioner has shown that his Fourth Amendment claim is meritorious, and then determine whether Petitioner demonstrated actual prejudice on account of the trial counsel's failure to promote such claim.

### a. Fourth Amendment Claim

 Generally, "the police may not conduct a search unless they first convince a [judge] that there is probable cause to [obtaining a warrant before conducting the search]." *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Warrantless searches are presumptively unreasonable. *United States v.*

*Cruz Jimenez,* 894 F.2d 1, 6 (1st Cir.1990) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). Where, as in the instant case, the Government has obtained evidence as a result of a warrantless search, and has used that evidence to form the basis of a subsequent search by warrant, the Government must show that the original warrantless search falls within one of the few specifically established and well delineated exceptions to obtaining a warrant prior to the search. *See United States v. Barnett,* 989 F.2d 546, 554 (1st Cir.1993), cert. denied, 510 U.S. 850, 114 S.Ct. 148, 126 L.Ed.2d 110 (1993) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Probable cause must also exist in conjunction with the recognized exception. *See United States v. Cresta,* 825 F.2d 538, 553 (1st Cir.1987), cert. denied *sub nom. Impemba v. United States,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). The exceptions to the search warrant requirement include: (1) search incident to arrest; (2) protective sweeps; (3) searches under exigent circumstances; (4) discovery of items based on plain perception; (5) automobile exception; (6) searches for purposes of administrative and special needs; and (7) stop and frisk doctrine. Charles A. Wright and Sarah N. Welling, 3A Federal Practice and Procedure: Federal Rules of Criminal Procedure § 675.

 A warrantless search, including entry into a person's dwelling, may be permitted if "exigent circumstances" arise. The government bears the burden of proving exigent circumstances. *United States v. Samboy,* 433 F.3d 154, 158 (1st Cir.2005) (quoting *United States v. Baldacchino,* 762 F.2d 170, 176 (1st Cir.1985)). To show exigent circumstances, "the police must reasonably believe that 'there is such a compelling necessity for immediate action

as will not brook the delay of obtaining a warrant.'" *Samboy, supra* (quoting *Fletcher v. Town of Clinton,* 196 F.3d 41, 49 (1st Cir.1999)). "Warrantless entries are most often justified by 'exigent circumstances,' the best examples being hot pursuit of a felon, imminent destruction or removal of evidence, the threatened escape by a suspect, or imminent threat to the life or safety of the public, police officers, or a person in [the] residence." *Bilida v. McCleod,* 211 F.3d 166, 171 (1st Cir.2000). In drug trafficking cases, "[s]uch exigent circumstances arise when, inter alia, the police have a reasonable fear that a person would destroy drug evidence unless the person's premises are secured." *United States v. St. Pierre,* 488 F.3d 76, 79 (1st Cir.2007) (quoting *Illinois v. McArthur,* 531 U.S. 326, 331–32, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001)). Proof of exigent circumstances "should be supported by particularized, case-specific facts, not simply generalized suppositions about the behavior of a particular class of criminal suspects." *Samboy, supra* (quoting *United States v. Hidalgo,* 747 F.Supp. 818, 828 (D.Mass.1990)).

Petitioner claims that the searches made on his residential apartment in the Vista Hermosa housing project on two separate occasions (one on August 29, 2004, and the second on June 28, 2005), on Apartment 285 of the Vista Hermosa housing project, on the Lincoln car,[3] on Petitioner's mini-market "El Anturión," and Petitioner's bank records, income tax returns and accounting records held by his accountant, were all made in violation of his Fourth

Amendment right. After reviewing the record of Criminal No. 05–194, the Court notes that the police had secured search warrants for the second search of Petitioner's residential apartment (Docket No. 681 of Criminal No. 05–194, page 84), the search of El Anturión mini-market (Docket No. 681 of Criminal No. 05–194, page 58), and the search of Petitioner's financial records (Docket No. 679 of Criminal No. 05–194, page 84). Thus, because they were not warrantless searches, the Court will not examine the circumstances surrounding the same for Fourth Amendment violations or the applicability of the exclusionary rule to the evidence seized thereupon.

██ The first search on Petitioner's dwelling was on August 29, 2004, when the police chased Petitioner into his residential apartment after he was seen leaving the scene of a shootout in the Vista Hermosa public housing riding a motorcycle with a gun in his left hand.[4] After the chase, the police followed Petitioner to his house, placing him under arrest and seized drugs, weapons and cash tied in rubber bands that were on plain sight in the dining room table (Docket No. 680 of Criminal No. 05–194, page 56). Based on the testimony at trial, the referenced search fits the exception for a valid warrantless search under "exigent circumstances" as it was the result of the police being in hot pursuit of a suspected felon. The testimony of the police proved with sufficient particularized and case-specific facts that their actions were justified.

Therefore, based on the testimony at trial, the police acted with an objectively

**3.** The Court notes that the record in criminal no. 05–194 describes the automobile make as Cadillac. (Docket No. 673 of Criminal No. 05–194, page 73).

**4.** The police was already in the Vista Hermosa public housing complex on preventive surveillance when they heard shots being fired and a man riding a motorcycle was fleeing the scene of the shootout with a weapon in his left hand and making detonations. The motorcycle rider was later identified as Edwin Colón–Díaz, the petitioner in the instant case. (Docket No. 680 of Criminal No. 05–194, pages 46–63).

reasonable good faith belief that their conduct during the entry and search of Petitioner's home was lawful and that his Fourth Amendment rights were not violated. The warrantless search is, thus, not unreasonable, and the evidence seized during the search—drugs, weapons and cash tied in rubber bands—would not have been subject to the exclusionary rule.

Petitioner also contends that the search on Apartment 285 of the Vista Hermosa public housing project and the evidence obtained and used against him at trial violated his Fourth Amendment rights. Further, Petitioner alleges that the reason provided by the police to proceed to Apartment 285 was pretextual as the amount of officers sent to investigate the domestic violence complaint was unusually large (Docket No. 2–2, page 9). In this respect, the police testified that the search of Apartment 285 was in response to a call of a domestic dispute and gun shots reported to be fired inside the apartment (Docket No. 674 of Criminal No. 05–194, page 44). The Government alleged that the quantity of officers sent to attend the domestic disturbance call represented a safety precaution because "[g]enerally, domestic disturbances are unpredictable and dangerous both to the participants and to the investigating officers" (Docket No. 10, page 6). To justify their search of the apartment, the police testified that the apartment door was broken and half-opened because its lock was also broken. The inside of the apartment was in complete disarray with old, broken furniture and the appearance that the apartment had not been lived-in for some time (Docket No. 674 of Criminal No. 05–194, pages 50–51). There is no information on the record that the police announced themselves or warned of their presence before entering the apartment and commencing the search. Instead, the record shows

that when the police arrived at Apartment 285, there was no suggestion of a disturbance in the apartment or that it was occupied. *Id.* Despite such observations, the police proceeded to search the apartment, its bedrooms and closets "to make sure no one was hiding in [the apartment] or [in] one of the bedrooms." *Id.* As a result of the search, the police found in the closet of one of the bedrooms several bags generally used for baseball equipment that were in good condition, contrary to everything else found within the apartment. Inside the bags the police found drugs, high-caliber weapons, ammunition for such weapons and paraphernalia. Id. From the testimony of the police, it appears as though they had exigent circumstances to validate their search of Apartment 285 without first securing a search warrant (i.e., domestic violence report together with detonations of shots being heard).

The Court is aware that Puerto Rico, as well as many other jurisdictions in the United States, has had many episodes of domestic disputes turning violent and even fatal. For such reasons, "[d]omestic violence situations require police to make particularly delicate and difficult judgments quickly." *Fletcher v. Town of Clinton,* 196 F.3d 41, 50 (1st Cir.1999). Although certain situations do not justify the police in believing an anonymous call, the Court finds reasonable for the police to believe an anonymous call about a domestic dispute in which someone inside an apartment in a public housing complex is in danger, whether such premises are vacant or occupied. Domestic disputes are not exclusive of the homes of the participants—these can occur anywhere the participants are physically located.

Based on the testimony at trial, this search fits the exception for a valid warrantless search under "exigent circumstances" as it was the result of the police

answering a call for a domestic dispute in which gun shots were allegedly fired. The police were justified in conducting the search of Apartment 285, which they reasonably concluded to be abandoned based on the apartment's condition observed upon their arrival. A police search of premises believed to be abandoned is not a search under the Fourth Amendment. *See* *McKenney v. Harrison,* 635 F.3d 354, 358–359 (8th Cir.2011) (the Eight Circuit validated the police entry into a house believed to be abandoned based on the condition in which the officers found the house and concluded that there was no Fourth Amendment violation). Further, although Petitioner claims that the reasons given by the police were a hoax, he proffered no evidence that, at the time of the entry and search of Apartment 285, the officers knew that the items found inside were the property of Petitioner and that they would eventually be used against Petitioner at a criminal proceeding.

For the aforementioned reasons, the Court finds that the police was objectively reasonable during the entry and search of Apartment 285 and that Petitioner's Fourth Amendment rights were not violated. The warrantless search is, thus, not unreasonable, and the evidence seized during the search—drugs, high-caliber weapons, ammunition for such weapons and paraphernalia—would not have been subject to the exclusionary rule.

█ Lastly, Petitioner contends that the search on· the Lincoln car and the evidence obtained and used against him at trial violated his Fourth Amendment rights. As to this warrantless search, the police testified to receiving a telephone confidence on March 24, 2004 about drugs and weapons stored in a white junk car parked in the Vista Hermosa public housing. The police believed the information to be truthful and found probable cause to

search the car based on their experience and their knowledge of the manner in which drug trafficking operations are conducted in the Vista Hermosa public housing (Docket Nos. 673 of Criminal No. 05–194, page 73 as to the search of the car, and 674, pages 35–36 as to the witnesses' experience of the drug trafficking operations in Vista Hermosa). The car had no license sticker ("marbete"), no license plates, all four tires on the car were flat, the doors were unlocked, and it looked as if it had not been driven in a long time. (Docket No. 673 of Criminal No. 05–194, page 73). The police searched the car and seized a backpack from the back seat of the car and four boxes form the trunk of the vehicle. Inside such containers, the police found paraphernalia that was eventually linked to Petitioner's drug trafficking organization. "[T]he only essential predicate for a valid warrantless search of a motor vehicle by law enforcement officers is probable cause to believe that the vehicle contains contraband or other evidence of criminal activity." *U.S. v. McCoy,* 977 F.2d 706, 710 (1st Cir.1992) (citing (internal quotations omitted)). See also *United States v. Maguire,* 918 F.2d 254, 260 (1st Cir.1990) (for the proposition that vehicular searches for contraband could proceed without a warrant if there is probable cause, citing *Carroll v. U.S.,* 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). The Court, therefore, finds that the police had reason to believe that there was probable cause to perform a warrantless search on the automobile. The Court also finds that the search of the car failed to violate Petitioner's Fourth Amendment rights as the car was abandoned and that the evidence seized as a result of such valid search should not be subject to the exclusionary rule for violation of Fourth Amendment rights.

Based on the former analysis, the Court finds that Petitioner's Fourth Amendment claim is without merit, as none of the evidence seized during the warrantless searches subject of the instant Section 2255 Motion should have been subject to the exclusionary rule. Even if the trial counsel would have filed motions to suppress evidence on account of the warrantless searches, he would not have succeeded.

As was previously discussed, in order to succeed in a claim of ineffective assistance of counsel grounded on a Fourth Amendment violations claim, Petitioner had to show both that his Fourth Amendment claim was meritorious and that there was actual prejudice on Petitioner for his trial counsel's failure to file the motions to suppress. Because Petitioner failed to prove the Fourth Amendment claim, the Court need not examine Petitioner's claims for actual prejudice. Thus, the Court holds that Petitioner's claim for ineffective assistance of counsel against his trial counsel for the alleged Fourth Amendment violation is without merit and should be dismissed.

### 2. Failure to Object to Jencks Violation

The Jencks Act, 18 U.S.C. § 3500(a), in relevant part, provides that, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." In the case the referenced statements or reports are not delivered to the defendant, the trial court shall order that the entire testimony of the Government witness be stricken from the record. Thereafter, the court, in its discretion, must determine whether to proceed with the trial or to declare a mistrial if a determination is made that the interests of justice so require. *See* 18 U.S.C. § 3500(d).

■ In this case, Petitioner contends that the trial counsel failed to object to Government witness Wanda Romero [5] and to request that her testimony be stricken from the record pursuant to a Jencks Act violation. Wanda Romero testified as to her direct knowledge of Petitioner's drug-trafficking organization in Vista Hermosa and her involvement at various transactions of sale and distribution of drugs that were the property of Petitioner (Docket No. 677 of Criminal No. 05–194, pages 17–80, and Docket No. 678 of Criminal No. 05–194). She also testified that the DEA agents to whom she reported would take notes when she was debriefing them (Docket No. 679 of Criminal No. 05–194, page 6) and that she read the notes. *Id.* at page 8. The Court then concluded that Romero had adopted the agents' notes. *Id.* The trial counsel requested to inspect such notes on June 16, 2006, but the Government declared that they were not available. *Id.* The following trial day, the trial counsel renewed the request for the agents' notes because the documents provided by the Government were allegedly missing the reports of the investigation, or DEA Form–6 (Docket No. 680 of Criminal No. 05–194, page 3). The Government testified that they had already informed the trial counsel that the DEA Form–6 reports did not exist. (Docket No. 680 of Criminal No. 05–194, pages 3–5). Unsatisfied with the Government's response, the trial counsel requested to know whether

---

5. Wanda Romero was a government informant that testified as to the various drug purchases made from Petitioner's drug point as part of the Government's investigation of Petitioner's drug-trafficking organization. (Docket No. 677 of Criminal No. 05–194).

the referenced DEA Form–6 reports corresponding to Romero's investigation existed at any time and whether they were destroyed despite the Government's instruction to the contrary. According to the transcript of the proceedings held on June 19, 2006 in Criminal No. 05–194, the parties, in accordance with the trial court, agreed to interrogate the agents that would have prepared such reports during their testimony as to the existence and whereabouts of Romero's DEA Form–6 reports. *Id.* However, the trial counsel failed to follow up on this matter during his cross-examination of the agents. There is no further information on the record about the allegedly missing Jencks material as to Wanda Romero. The trial court was never aware of whether the DEA Form–6 reports were ever made by the agents as to Romero, or if they were destroyed before the trial counsel was able to inspect them. The trial court was not moved to make a Jencks Act ruling under the Jencks Act as to the testimony of Wanda Romero.

Based on what the trial counsel knew at the time he was preparing for and performed the cross-examination of the agents, he should have inquired them as to the completeness of the Jencks material provided by the Government regarding Wanda Romero's investigation. The trial counsel failed at this endeavor when he failed to follow through with the objection about the Jencks material and when he failed to move the trial court to make a ruling on such matter. For such reason, the Court is of the opinion that the trial counsel's representation fell below an objectively reasonable standard of the profession. The first prong of the *Strickland* analysis has been duly satisfied. The Court then must proceed to examine whether defendant suffered prejudice. The Court concludes that no prejudice existed.

■ As was previously stated in the instant Opinion and Order, to show prejudice, a defendant must establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. In Petitioner's case, that means that he would have been found not guilty if the trial counsel would have followed thru with the Jencks materials objection during his cross-examination of the agents. The Court finds this contention incongruous because the Government presented a solid case against Petitioner. The Government produced the testimony of approximately twenty witnesses that provided much insight into Petitioner's drug-trafficking operation in Vista Hermosa. Among those witnesses, the Government introduced the testimony of a co-conspirator, various police officers and Government agents that investigated Petitioner's organization for various years. The Government also presented a significant amount of incriminating evidence against Petitioner (e.g., drugs, weapons, ammunition, and paraphernalia). Lastly, as discussed by the First Circuit in Petitioner's appeal:

> . . . federal agents gathered a considerable quantum of additional evidence that would later be presented at trial, including: (1) a video showing Colón in close proximity to the yellow point; (2) witnesses who said they saw Colón near the yellow point and that Colón appeared concerned with the goings-on there; (3) the testimony of Colón's friend and fellow drug trafficker, Jesús Rivera–Santiago ("Rivera"), that Colón owned the yellow point; (4) the testimony of Colón's coconspirator Rafael Soto–Torres ("Soto") that Colón owned the yellow point and that Soto sold drugs at the yellow point on behalf of Colón; (5) evidence that a search of Colón's store turned up police scanners and surveil-

lance cameras that were located both inside and outside the store, but no food or other goods on the shelves; (6) evidence that a search of an apartment belonging to Colón yielded a large amount of drugs, drug paraphernalia, cash, a cash counting machine, a police scanner, and some weapons; and (7) that Colón had made down payments of thousands of dollars on a number of expensive homes, sometimes in cash, even though he only registered a monthly income of $100.

*U.S. v. Colón–Díaz,* 521 F.3d 29, 32 (1st Cir.2008). Even if the trial counsel would have been successful at eliminating Wanda Romero's testimony from the record, the remaining testimonies and evidence admitted at trial would have easily supported the guilty verdict in Petitioner's criminal case. Therefore, Petitioner was unable to establish with reasonable probability that but for trial counsel's error in failing to follow thru the objection as to the Jencks material of Wanda Romero, Petitioner's conviction would have been different. Wanda Romero's testimony was not prejudicial but merely cumulative.

For the aforementioned reasons, Petitioner has failed to establish a cause for ineffective assistance of counsel as to his trial counsel's performance in connection with his failure to move to suppress certain evidence obtained during various warrantless searches and his failure to move the trial court for a Jencks Act ruling as to the testimony of Wanda Romero. Therefore, Petitioner's claim against his trial counsel is without merit and the Section 2255 Motion must be denied as to Petitioner's trial counsel.

### B. Claims As To Appellate Counsel

 Criminal defendants have a due process right to the effective assistance of counsel on appeal. *See Evitts v.* *Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Anders v. State of Cal.,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Once defense counsel has undertaken the appeal, counsel has the duty to support the client's appeal to the best of his or her ability. *Id.* Appellate counsel's effectiveness is judged by an objective standard of reasonableness. *See Cockett v. Ray,* 333 F.3d 938, 944 (9th Cir.2003). However, the appellate counsel's logical or tactical decisions do not constitute ineffective assistance. *See Gaines v. Matesanz,* 272 F.Supp.2d 121, 143–44 (D.Mass.2003). "Appellate counsel has no constitutional duty to raise every issue, where, in the attorney's judgment, the issue has little or no likelihood of success." *Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Federal Courts "review claims of ineffective assistance of appellate counsel according to the standard set out in *Strickland v. Washington,* [*supra*]." *Miller v. Keeney,* 882 F.2d 1428, 1433 (9th Cir.1989). Thus, a defendant claiming a violation of his right to effective assistance of counsel must show that counsel's performance fell below an objective standard of reasonableness (*Strickland,* 466 U.S. at 688, 104 S.Ct. 2052), and that there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would have prevailed on appeal (*Miller,* 882 F.2d at 1434). Thus, appellate counsel's performance, although deficient, will not be deemed ineffective assistance where the defendant is not prejudiced by his or her performance. *See Bingham v. Duncan,* 2003 WL 21360084 (S.D.N.Y.2003).

In this case, Petitioner claims ineffective assistance of his appellate counsel based on counsel's failure to argue on appeal that the trial court erred in admitting into evidence the testimony of two lay witnesses— Agent Luis Batiz–Maldonado and Ms. Ketsy Cardona—that should have been consid-

ered expert testimony and regulated under Rule 702 of the Rules of Evidence. Thus, Petitioner contends that the testimony of Agent Batiz and Ms. Cardona under Rule 701 of the Rules of Evidence was so detailed and lengthy that it went "well beyond what a lay witness can be allowed to testify under Rule 702 (sic)."[6] (Docket No. 2–2, page 36).

Under *Strickland,* Petitioner is required to identify acts or omissions by counsel which need to be outside the wide range of professional competent assistance and the harm such actions caused. Furthermore, "a defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Moreno–Espada v. United States,* 666 F.3d at 64 (quoting *Tevlin v. Spencer,* 621 F.3d at 66). Thus, the first prong of the *Strickland* analysis requires that the Court determine the merits of Petitioner's alleged error as to the alleged expert testimony admitted from a lay witness.[7]

▮ Pursuant to Rule 701 of the Rules of Evidence, the testimony of a lay witness may be admissible if such testimony is "rationally based on the witness's perception," is "helpful to clearly understanding the witness's testimony or determining a fact in issue;" and is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[8] The distinction between lay opinion under Rule 701 and expert testimony under Rule 702 is not easy to establish. *See United States v. Ayala–Pizarro,* 407 F.3d 25, 28 (1st Cir.2005). One same witness may provide both lay and expert testimony in a single case. Nonetheless, inasmuch as the testimony offered as a lay witness satisfies the requirements of Rule 701, the testimony does not automatically become expert testimony. The First Circuit has long held that "government witnesses with experience in drug investigations may explain the drug trade and translate coded language for juries, either through lay or, if qualified, expert testimony." *United States v. Rosado–Pérez,* 605 F.3d 48, 56 (1st Cir.2010) (citing *United States v. Santiago,* 560 F.3d 62, 66 & n. 1 (1st Cir. 2009)).[9] *See also U.S. v. Paiva,* 892 F.2d

---

**6.** The Court notes that Petitioner erroneously made reference to Rule 702, which regulates expert testimony, instead of Rule 701, which regulates testimony of lay witnesses.

**7.** Generally, non-constitutional claims that could have been, but were not, raised on appeal may not be asserted in a Section 2255 Motion. 28 U.S.C.A. § 2255. However, the Court will examine this issue only as grounds for Petitioner's claim of ineffective assistance of his appellate counsel. *See Oliver v. U.S.,* 961 F.2d 1339 (7th Cir.1992), cert. denied 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992) (finding that counsel's ineffectiveness will constitute "cause" for defendant's failure to challenge guilty plea on direct appeal, enabling defendant to seek collateral relief under Section 2255); *Worthington v. U.S.,* 936 F.Supp. 586 (E.D.Wis.1996) (for the proposition that ineffective assistance of counsel may constitute cause for failing to raise argument on direct appeal); and *Foy v. U.S.,* 838

F.Supp. 38 (E.D.N.Y.1993) (holding that on a Section 2255 motion, failure to raise claims on direct appeal may be excused if attributable to ineffective assistance of appellate counsel).

**8.** Rule 702 regulates opinion testimony when offered by a witness testifying as an expert.

**9.** It is noteworthy that the First Circuit's position as to the distinction between expert testimony under Rule 702 and lay opinion testimony under Rule 701, and as to admitting the testimony of police officers as lay witnesses has been urged to be re-examined by Circuit Judge Lipez in a concurring opinion in *U.S. v. Valdivia,* 680 F.3d at 57–58, urging the court to "rethink the precedent. We need to apply the bright line rule that the language of *Rule 702* provides in deciding whether the police officer is testifying as a fact witness or an expert witness." *Id.* at 73. (Emphasis in original).

148, 157 (1st Cir.1989) (finding no abuse of discretion where a lay witness identified a substance perceived as cocaine "based on past experience and personal knowledge and observation."); *U.S. v. Harrell,* 737 F.2d 971, 978–79 (11th Cir.1984), cert. denied, 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985); *U.S. v. Zielie,* 734 F.2d 1447, 1456 (11th Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *U.S. v. Sweeney,* 688 F.2d 1131, 1145–46 (7th Cir.1982); *U.S. v. Gregorio,* 497 F.2d 1253, 1263 (4th Cir. 1974), cert. denied, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974); *U.S. v. Huddleston,* 810 F.2d 751, 754 (8th Cir.1987) (quality of cocaine).

 Rule 701(c) of the Rules of Evidence establishes that the opinion of a lay witness should not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." This prohibition was added pursuant to the amendments of 2000 and "was intended to 'eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" *U.S. v. Valdivia,* 680 F.3d 33, 50 (1st Cir.2012) (quoting Fed.R.Evid. 701, Advisory Committee's note to the 2000 amendments). In analyzing the difference between the testimony under Rule 701 and Rule 702, the First Circuit has held that "the line between expert testimony under Rule 702 and lay opinion testimony under Rule 701 is, in practice, 'not an easy one to draw.'" *Id.* (quoting *U.S. v. Colón Osorio,* 360 F.3d 48, 52–53 (1st Cir. 2004)). "There is no bright-line rule to separate lay opinion from expert witness testimony." *U.S. v. Hilario–Hilario,* 529 F.3d 65, 72 (1st Cir.2008). This was the precedent since before Petitioner was arrested, during his prosecution at trial, during sentencing, during his appeal, and

continues to be the binding precedent in the First Circuit. Therefore his appellate counsel's performance cannot be catalogued as "deficient" under the first test of *Strickland. See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Thus, "[e]xperience-derived police testimony concerning criminals' typical *modi operandi* during a drug transaction does not automatically constitute expert testimony, but depending on the content and circumstances can be [. . .] lay-witness testimony admissible under Federal Rule of Evidence 701 without necessity for pretrial disclosure to the defense." *U.S. v. Page,* 542 F.3d 257 (1st Cir.2008).

 Agent Luis Batiz–Maldonado is a Puerto Rico police officer whom, at the time of the trial, had twelve years of experience—seven of which were spent working in the narcotics division of the Puerto Rico Police Department—and was then working for the Special Investigations Bureau of the Puerto Rico Department of Justice (Docket No. 544 of Criminal No. 05–194). At the time of the investigation of Petitioner's drug-trafficking operations, Agent Batiz was assigned to work with the Bureau of Alcohol Tobacco, Firearms and Explosives ("ATF") in a sting operation that involved various state and federal law enforcement agencies. In the operation, law enforcement agents would identify high drug-trafficking areas and infiltrate the criminal and drug-trafficking organizations controlling such areas to deter their criminal activities. Agent Batiz was an undercover agent working directly in the sting operation at the Vista Hermosa public housing project for approximately two and a half years. *Id.* at 58. Part of his responsibilities included surveillance of the drug points in Vista Hermosa at day or night, and hiring, training, briefing, debriefing and safekeeping of confidential in-

formants—including Ms. Ketsy Cardona and Wanda Romero. *Id.*

Agent Batiz' testimony was based on his direct observation of the criminal activities and drug-related transactions in Vista Hermosa, his experience as a narcotics agent, his examination of the recordings of the yellow or "punto tigre" drug point made by confidential informant Ketsy Cardona, and corroborating the information provided by Ketsy. He testified as to the location of the four drug points in Vista Hermosa, the facilities that were nearby the drug points, the identification of the drug points ("punto Amarillo [also known as] punto tigre, punto brown, punto rojo and punto negro." *Id.* at 38). Agent Batiz also testified as to the packaging of the different types of drugs sold (small clear plastic baggies with identifying stickers for marijuana and/or cocaine, vials with caps of different colors for cocaine base, and aluminum foil wrapping like "small pasteles" for heroin. *Id.* at 42–44).

Ms. Ketsy Cardona was a confidential informant hired by the Drug Enforcement Administration ("DEA") to assist the law enforcement agencies in their sting operation of Vista Hermosa. Ms. Cardona was instructed to record with a video camera the drug-related transactions of "punto tigre," a drug point located below her bedroom window of the apartment in Vista Hermosa where the DEA relocated Ms. Cardona. *Id.* at 19–21 and Docket No. 545 of Criminal No. 05–194. Ms. Cardona was recruited based on her experiences in drug-trafficking for eight years in Puerto Rico in the San Juan area (Barrio Obrero, Puerta de Tierra, Las Gladiolas, and Crisantemo) (Docket No. 545 of Criminal No. 05–194, page 16–18) and in the United States (Pennsylvania) (Docket No. 544 of Criminal No. 05–194, page 50).

■ Ketsy Cardona's testimony was based on her direct observation of the drug-related transactions in "punto tigre" of Vista Hermosa, her experience in drug-trafficking as a runner, packer, seller and weapons custodian,[10] and her recordings of the transactions of "punto tigre." (Docket Nos. 545 and 546 of Criminal No. 05–194). Ms. Cardona made 36 video recordings of the transactions at "punto tigre" that took place for 72 days (Docket No. 544 of Criminal No. 05–194, pages 55). Ms. Cardona's testified as to the location of "punto tigre," of the drug transactions that took place in the same, the persons that she had seen operating "punto tigre" and their roles in the operation (i.e., the seller, the lookout, and the runner). She also testified as to the type of drugs sold at "punto tigre," which she could identify based on their physical appearance because she herself used to sell drugs ("some had white stuff, others had green stuff.") (Docket No. 545 of Criminal No. 05–194, pages 16–18), the packaging of the different types of drugs sold, and the identifying marks and colors in the packaging ("the baggies that I saw in Vista Hermosa (. . .)[had] the face, the head [of a tiger]." *Id.* at 21).

Based on the Court's examination of the testimonies of Agent Batiz and Ms. Cardona, the Court finds that these wit-

10. "I would make the decks, I would sell, I was a runner and I would also store weapons." Preparing decks is the "word normally used when you are working with cocaine, because you have to process it, weigh it, and package it." Marijuana and cocaine are packaged in "transparent or zip lock type bags," and the sizes vary based on the price. As for crack, "you have to cook it, there is a process that it takes before you put it in the vials. But the vials they are a size (. . .) about an inch and a half and it is transparent and the caps are different colors." Ms. Cardona's testimony when asked about her duties and the drug point in the Crisantemos public housing project. Docket No. 545 of Criminal No. 05–194, pages 18–19.

nesses were limited to testifying to opinions gleaned from factual information that they personally perceived—one as an undercover narcotics agent and the other as a former drug-trafficker turned confidential informant and videographer. The testimonies of Agent Batiz and Ms. Cardona were not expert testimonies, as their opinions were not derived from information that they did not personally perceived. As previously described, Agent Batiz based his testimony on his surveillance of Vista Hermosa and his participation for two years and a half in the sting operation, while Ms. Cardona's testimony was based on the illegal drug-trafficking activities she performed in the past and the illegal drug-trafficking activities she observed at the drug point Vista Hermosa. Their testimony was properly admitted as lay witness testimonies under Rule 701 of the Rules of Evidence or as personal observations. Thus, Petitioner's claim that the trial court erred in admitting into evidence expert opinions from two lay witnesses is meritless.

Based on the above, although the appellate counsel could have raised and argued this matter on appeal, he would not have been successful. Therefore, Petitioner could not have been prejudice by the appellate counsel's decision not to include such argument on appeal. Petitioner has failed to establish a cause for ineffective assistance of counsel against his appellate counsel for his failure to argue on appeal that the trial court erred in admitting into evidence lay expert opinions of two lay witnesses—witnesses that had long previous experience as to the drug world. *U.S. v. Rosado–Pérez*, 605 F.3d at 56. Therefore, Petitioner's Section 2255 Motion must be denied also as to this matter.

First Circuit Court precedent at the time of the trial, at the time of the appeal, and at the time of the instant *Opinion and Order* authorizes police officers to provide lay expert testimony, as set forth in Rule 701, based on "witness perceptions" that are "helpful to clearly understand[...] the witness's testimony or determin[e] a fact in issue," provided that such testimony is "not based on scientific, technical, or other specialized knowledge." Thus, the Court must conclude that the challenged testimony constitutes lay expert testimony as provided in Rule 701. *See U.S. v. Valdivia*, 680 F.3d at 39–43 (providing examples of authorized opinions under Rule 701, such as heroin being packed in "aluminum decks," and that "post-it notes were likely drug orders.")

## IV. CONCLUSION

For the reasons stated above, the Court finds that Petitioner failed to establish violation of his right to effective assistance of competent counsel at the trial as well as the appellate level as secured under the Sixth Amendment. This finding is based on the Court's finding that Petitioner failed to meet the two-prong test requirements of *Strickland* as to Petitioner's appellate counsel and the second prong of such test as to Petitioner's trial counsel. Therefore, the Court determines that the errors alleged by Petitioner as to Magistrate Judge Arenas' conclusions in the R & R are meritless. Consequently, the Court **ACCEPTS, ADOPTS** and **INCORPORATES** by reference the Magistrate's R & R (Docket No. 32) to the instant Opinion and Order.

As we have concluded that Petitioner has not satisfied the applicable *Strickland* test for ineffective assistance of counsel, the Petitioner's Section 2255 Motion (Docket No. 1) is hereby **DENIED** without the need for an evidentiary hearing. *See United States v. LaBonte*, 70 F.3d 1396, 1412–1413 (1st Cir.1995) ("A district court may dismiss a section 2255 petition with-

out holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations, although adequate on their face, consist of no more than conclusory prognostications and perfervid rhetoric, or if the key factual averments on which the petition depends are either inherently improbable or contradicted by established facts of record."); *see also* 28 U.S.C. § 2255 (explaining that a hearing is unnecessary when the record "conclusively shows that the prisoner is entitled to no relief"). Judgment shall be entered accordingly.

For the reasons previously stated, the Court hereby **DENIES** Petitioner's request for relief pursuant to 28 U.S.C. § 2255. It is further **ORDERED** that no certificate of appealability should be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.